Judge Dane
delivered the opinion of the court:
Four distinct liens upon the land are presented upon this suit: 1. The lien for the purchase money in the sale in 1808, found due and charged upon the land by the decree of a court of chancery, rendered in 1819, in a suit instituted in 1811. 2. The mortgage to Johnston and Hammond, in 1810. 1. The lien of Caldwell, judgment rendered in 1815. 4. The lien of the judgment in favor of the Belmont Bank of St. Clairsville, rendered in 1818.
The lien for the purchase money is well established against the parties and their representatives, and all claiming under them with notice. The decree charging it upon the land is not necessary for its validity; all who are bound by it in this ease are bound from the time of the sale. 5 Ohio, 39; 4 Wheat. 255 ; Wr. S. O. 356. Although it is a lien in equity only, yet being specific, attaching to certain property, it is entitled to a preference over subsequently accruing general liens at law. Bank of Muskingum v. Adm’rs of Carpenter et al., decided this term. The judgments, therefore, of Caldwell, and of the Bank of St. Clairs *229 ville, must be postponed to this; and it is entitled to a preference over all later rights, except those of a purchaser for a valuable consideration without notice.
The mortgage by Posey to Johnston and Hammond was intended to possess this character. It conveyed the legal estate to a mortgagee, who has the privileges of a purchaser. No-actual notice of the equitable lien is shown ; no constructive notice arises before the pendency of suit in 1811.
An attempt is made to invalidate the mortgages by denying the right of the mortgagee to apply it to a purpose different from that expressed on its face, viz : to secure the payment *of a note at the bank at Washington, which was never incurred. If a person had been misled by this description, and after due inquiry had advanced money upon, or acquired an interest in this specific land, in the confidence of the non-existence of such a lien, perhaps his rights might be preferred; but a mere general incumbrancer, if he acquires no paramount legal right, occupies the position of the debtor, and holds his interests subject to all the equities which may be exacted against him. It is evident, in this case, that the grantor of this deed intended it as a protection to his indorsers for their responsibility, upon a contemplated loan for five hundred dollars; it is permitted in equity to trace this debt in favor of securities wherever contracted, and under any form it may assume in the usages of business, and attach the security to it. 4 Johns. Ch. 55. The judgment creditor has no reason to complain of rights infringed by this rule, for the mortgage transferred the the legal estate and defined the extent of the burden it imposed upon the land, differing from the case in the New York Reports,, where a mortgage for three thousand dollars was recorded as for three hundred dollars, and held to incumber the estate no farther; it was, then, of no moment to the later incumbrancers who held this lien, so long as it did not transcend the original amount. Since then it is shown that the debt contracted at the Bank of Steubenville, and afterward transferred under bank usages to the-Belmont Bank, was intended by the parties to be secured by the mortgage, and that the mortgage was taken by the grantees without notice of the non-payment of the purchase money; it is the preferable item. The lien for the purchase money is to be next satisfied; lastly, the liens by judgment in the order of their dates.